UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
BEATRICE LOZADA,

              Plaintiff,

   -against-                                          CV 16-6302 (JS) (AYS)

COUNTY OF NASSAU and EDWARD
MANGANO Individually, and in his capacity
As NASSAU COUNTY EXECUTIVE,

              Defendants.
---------------------------------------------------------X

**ANNE Y. SHIELDS, Magistrate Judge:**

Plaintiff Beatrice Lozada ("Plaintiff" or "Lozada") commenced this action on November 14, 2016, alleging employment discrimination in the form of unlawful retaliation for the exercise of her First Amendment rights. Specifically, Lozada claims that she was retaliated against for filing a complaint with the New York State Division of Human Rights. See Docket Entry ("DE") 1. Defendants in this action are County of Nassau (the "County") and Edward Mangano ("Mangano").

Presently before the Court is Defendant's motion to quash the non-party depositions of Comptroller George Maragos ("Maragos") and Deputy County Executive Robert Walker ("Walker"). For the reasons set forth below, and subject to the restrictions herein the motion is denied.

BACKGROUND

I.    Procedural History

As noted above, this action was commenced on November 14, 2016. On January 24, 2017, this Court held an initial conference, wherein the parties' proposed discovery plan was so ordered, and discovery was scheduled to complete by November 7, 2017. DE 13, 14. On May 25,

1

2017, this Court held a status conference, at which time Plaintiff was directed to depose County witnesses by August 30, 2017. DE 19. The parties were further directed to submit a joint status report to this Court on August 14, 2017. DE 19. On August 31, 2017, the parties filed their joint status letter. In the letter, Plaintiff advised the Court that the Defendants denied her request to depose George Maragos (the Nassau County Comptroller) and Robert Walker (Chief Deputy County Executive for Nassau County). Plaintiff further advised the Court of her intent to compel the depositions of such individuals. DE 21. On October 13, 2017, the parties submitted a further joint status letter to this Court. DE 22. In the letter, Plaintiff once again advised the Court that Defendants were denying Plaintiff's requests to take the depositions of Maragos and Walker. DE 22. As Plaintiff had yet to move to compel, this Court directed counsel to confer with regard to the two depositions, and further directed them to submit a proposed briefing schedule if an agreement could not be reached. See Electronic Order dated October 23, 2017. A proposed briefing schedule was submitted for Defendants' motion to quash, which this Court so ordered. DE 23. On November 29, 2017, Defendants' fully briefed motion to quash (styled as a motion to strike deposition notices) was filed. DE 24, 25, 26. As such the motion is now ripe for decision.

II. Relevant Background Information

Lozada is a Hispanic female and single mother who has been employed by the Nassau County as an administrative aide from 2010 until 2016. Complaint ("Compl.") ¶ 9, DE 1. During a partially overlapping period of time, Lozada was also a volunteer at Elmont Fire Department from 2006 to 2013. Id. In or around 2011, Lozada filed a complaint with the New York State Division of Human Rights ("NYSDHR"). The complaint alleged that she was subjected to harassment and discrimination based upon her status as a Hispanic female and single mother while serving as a volunteer with Elmont Fire Department. Compl. ¶ 11.

According to Lozada, around the time that she filed her complaint with the NYSDHR, she also secured a position with the County. Lozada claims that the County was unaware of her pending NYSDHR claim at the time she was offered the position. She alleges that after disclosing information about her complaint to Herbert Flores ("Flores"), a long time County employee, she was asked to write down the names of her family members who lived in Nassau County. After producing the list to Flores, Flores is stated to have relayed the information to Brian Nevin, counsel for the County Executive. Flores then is stated to have told Lozada that he would not help her with her complaints of discrimination. Compl. ¶ 16.

Lozada prevailed at the NYSDHR hearing. She was awarded $60,000 in compensatory damages, and the Fire Department was fined $20,000.[1] Compl. ¶ 17. Various media outlets publicized Plaintiff's award. Lozada claims that the public attention she received resulted in her becoming a target of threats and intimidation. Compl. ¶ 18.

Lozada alleges, based upon information and belief, that on or about March of 2013, the County became aware of Plaintiff's complaint with the NYSDHR. Compl. ¶ 19. She states that she was thereafter subjected to a pattern of retaliatory behavior, including being referring to as "the problem child of Nassau County," trying to freeze her out of the workplace, and receiving threats against her and her daughter's physical safety. Compl. ¶ 20-22. Lozada sought assistance from the Nassau County Police Department and the Nassau District Attorney's Office. Compl. ¶ 23.

In or around 2013, Lozada uncovered that the Fire Department was illegally misappropriating monies from pension funds by fabricating call response sheets. Compl. ¶ 24. Lozada attempted to inform County Executive Mangano of the Fire Department's illegal

---

[1] The Court notes that Plaintiff's award was reversed, and Plaintiff's appeal is currently pending.

3

conduct; however, she was never given a chance to meet with Mangano. Compl. ¶ 25. On or about March 24, 2016, Plaintiff brought her concerns to the then acting Special Assistant to the County Executive, Anne De Michael ("De Michael"). Compl. ¶ 26. Lozada claims that her attempts to shed light on the illegal situation were met with hostility, and that De Michael instructed Lozada to "shut her mouth," and additionally threatened Lozada's well-being and the well-being of her family. Compl. ¶ 26. Thereafter, Lozada's supervisor at the County, Eldia Gonzalez, warned Lozada to "lay off" Elmont, "as both the town and the County are parts of the same Republican machinery, and that she would never rise within the ranks if she continued to make waves." Compl. ¶ 27.

Despite such warnings and threats, Lozada avers that she continued to illuminate the Fire Department's wrongdoings. Compl. ¶ 29. She claims that she complained to the Captain of the Fire Department and the District Attorney's Office. According to Lozada, neither complaint effectuated change; instead, the Captain met her with hostility, and the District Attorney's Office lost her first complaint. Lozada further claims that her endeavors to bring attention to the Fire Department's conduct resulted in Defendants' attempts to sabotage her career.

Of particular relevance to the present motion are Plaintiff's claims that she was promised a particular position and was denied that position in retaliation for the expression of her First Amendment rights. The allegedly promised position was working directly with Maragos, as his "right hand man." Lozada claims that she met directly with Maragos who offered her the position at her requested annual salary of $80,000. The offer of employment with Maragos is alleged to have been confirmed by Maragos and other County employees, including Walker. Compl. ¶ 33. Plaintiff testified as to these facts at her deposition. Lozada claims that after the County learned of her complaint of discrimination, the offer to work for Maragos was rescinded. Plaintiff claims

other acts of retaliation which are not relevant to the present motion and with therefore not be outlined herein. See Compl. ¶ 36-44. On February 26, 2016, Lozada was terminated from her position. Compl. ¶ 45.

## DISPOSITION OF THE MOTION

I.	The Parties' Positions

Defendants move to quash the depositions of Maragos and Walker on the ground that these individuals are high-ranking public officials whose depositions are not relevant to this matter. They further argue that even if the information sought is relevant, that information is available via interrogatory or from other sources. DE 24.

As to relevance, Defendants argue that the alleged conversations Lozada had with Maragos and Walker are not relevant because Lozada cannot prove that she suffered an adverse job action. Defendants assert that the failure to be hired after a general inquiry to an unidentified position is not an adverse job action, and even if it were, Lozada cannot establish a nexus to any protected activity. DE 24 at 2. Defendants argue further that a deposition of Maragos lacks relevance because Maragos did not know about the alleged protected activity at the time he is stated to have met with Plaintiff, and Plaintiff cannot show that such statement was the reason for the denial of the position she claims to have been offered. DE 24 at 3. Similarly, as to Walker, Defendants argue no conversation with him is relevant, as "the only thing she alleged is that she discussed the timing of the new position with DCE Walker, which is something over which he would not have control…." DE 24 at 3. Defendants further argue that Lozada has failed to demonstrate that the information she seeks from Maragos and Walker cannot be obtained from alternative sources. In support of this argument, Defendants point out that Lozada has yet to serve interrogatories on Maragos and Walker, and further contend that Lozada can depose two

other, lower ranking, county employees to determine if the issue of pension fraud was discussed by Walker or Maragos. DE 24 at 3.

Lozada, on the other hand, argues that her interview with Maragos was more than a general inquiry. Indeed, Lozada testified at her deposition that it was Maragos who told her that she was "definitely in" and that he would secure the $80,000 salary she requested. DE 25. Moreover, Lozada testified that she was told that she "was going to be Maragos' right-hand man and – for the Latino community," and that her duties would include translating for him and networking for him. See Lozada deposition testimony (page 88); DE 25-2-5. These statements raise an issue as to Defendants' position that Plaintiff was offered no more than an unidentified position, and support Plaintiff's argument that Maragos had particular conversations with Plaintiff as to the position. As to the conversations between Lozada and Walker, Plaintiff also testified as to Walker's personal involvement in the alleged position working for Maragos. Thus Lozada states that Walker personally communicated with her as to the status of the position, informing her that "additional steps would be made to complete her transfer." DE 25-3.

II. Legal Principles

a. Scope of Discovery

The scope of discovery is set forth in Rule 26 of the Federal Rules of Civil Procedure. That Rule has been amended, on several occasions, to reflect evolving judgments as to the proper scope of discovery. Over time, these amendments have been aimed at striking the proper balance between the need for evidence, and the avoidance of undue burden or expense.

In 1999, Rule 26(b)(1) stated that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any

6

other party." Fed. R. Civ. P. 26(b)(1) (1999). In 2000, in an effort to curb over-discovery that took advantage of tying the term "subject matter" to the definition of the scope of discovery, Rule 26 was amended. See Fed. R. Civ. P. 26(b)(1), Advisory Comm. Notes (2000). That amendment required a party to show "good cause" before obtaining discovery that is "relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1).

Most recently, as of December 1, 2015, Rule 26 has again been amended. The December 2015 amendment to Rule 26 now defines the scope of discovery to consist of information that is relevant to the parties' "claims and defenses." Thus, the discretionary authority to allow discovery of "any matter relevant to the subject matter involved in the action" has been eliminated. Additionally, the current version of Rule 26 defines permissible discovery to consist of information that is, in addition to being relevant "to any party's claim or defense," also "proportional to the needs of the case." Id.

While proportionality factors have now been incorporated into the Rule 26(b)(1) definition, those factors were already a part of federal discovery standards, appearing in Rule 26(b)(2)(C)(iii). Those proportionality factors have now been restored to the place of their intended importance by their incorporation into the very definition of permissible discovery. See Fed. R. Civ. P. 26(b)(1), Advisory Comm. Notes (2015) (noting that amendment "restores the proportionality factors to their original place in defining the scope of discovery," and "reinforces the Rule 26(g) obligation of the parties to consider these factors in making discovery requests, responses, or objections").

The specific proportionality factors to be assessed when considering the scope of discovery are:

- The importance of the issues at stake in the litigation;

- The amount in controversy;

- The parties relative access to relevant information;

- The parties' resources;

- The importance of discovery in resolving issues; and

- Whether the burden or expense of the discovery is outweighed by the benefit

Fed. R. Civ. P. 26(b).

Notably absent from the present Rule 26 is the too familiar, but never correct, iteration of the permissible scope discovery as including all matter that is "reasonably calculated to lead to" the discovery of admissible evidence. This language was never intended to define the scope of discovery, but was intended only to make clear that the discovery is not limited by the concept of admissibility. Unfortunately, the "reasonably calculated" language has often been employed to refer to the actual scope of discovery. Clearing up this misinterpretation, the current rule disposes of this language, ending the incorrect, but widely quoted, misinterpretation of the scope of discovery. The present definition of the scope of discovery continues to refer to admissibility, but only by stating that "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b).

Overarching the interpretation of Rule 26, and indeed all of the Federal Rules of Civil Procedure, is the standard referred to in Rule 1 thereof. That Rule, as amended in December of 2015, requires that the Federal Rules of Civil Procedure "be construed, administered, and employed *by the court and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding. " Fed. R. Civ. P. 1 (emphasis added). See Comment to 2015 Amendment to Rule 1 (noting that "the parties share the responsibility" to employ the rules

consistently with the standards of Rule 1, and that "[e]ffective advocacy is consistent with -- and indeed depends upon -- cooperative and proportional use of procedure") (emphasis added).

Judicial involvement has long been recognized as critical to the effective management of discovery. Thus, as early as 1983, the Advisory Committee explained that "[t]he rule contemplates greater judicial involvement in the discovery process and thus acknowledges the reality that it cannot always operate on a self-regulating basis." Committee Notes (2015) (referring to 1983 notes). Again in 2000, the Advisory Committee noted that it had been "informed repeatedly by lawyers that involvement of the court in managing discovery is an important method of controlling problems of inappropriately broad discovery") (Committee Notes 2000). The 2015 amendment revisits this theme, noting that the amendment "again reflects the need for continuing and close judicial involvement in the cases that do not yield readily to the ideal of effective party management," including that cases where "the parties fall short of effective, cooperative management on their own." Advisory Comm. Notes 2015.

b. Depositions of High Ranking Officials

High-ranking officials are often saddled with more duties and constraints than other individuals. As such, the party seeking a deposition of a high-ranking official must establish that exceptional circumstances warrant the taking of the deposition. Lederman v. New York City Dep't of Parks & Recreation, 731 F.3d 199, 203 (2d Cir. 2013) (citing United States v. Morgan, 313 U.S. 409, (1941)). To hold otherwise, would likely require such officials to expend an inordinate amount of their limited time addressing ongoing litigation matters. Moriah v. Bank of China Ltd., 72 F. Supp. 3d 437, 440 (S.D.N.Y. 2014) (citations omitted). The Second Circuit has found that exceptional circumstances exist if "'the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other,

9

less burdensome or intrusive means.'" Lederman, 731 F.3d at 203 (citing Bogan v. City of Boston, 489 F.3d 417, 423 (1st Cir. 2007) and In re United States (Holder), 197 F.3d 310, 316 (8th Cir. 1999)). Indeed, in this Circuit, a deposition of a high-ranking government official may only be taken if "(1) the deposition is necessary in order to obtain relevant information that cannot be obtained from any other source; and (2) the deposition would not significantly interfere with the ability of the official to perform his or her governmental duties." Boudouris v. Cty. of Nassau, 2016 WL 4288645 (E.D.N.Y. 2016) (quoting Victory v. Pataki, 2008 WL 4500202, at *2 (W.D.N.Y. 2008) (internal quotation marks omitted)).

With these standards in mind, the Court turns to analyze the relevant factors.

III. The Motion to Quash the Depositions is Denied

Defendants' motion to quash is denied. Lozada has submitted sufficient testimony and allegations to support her claim that Maragos had direct communications with Plaintiff that are relevant to her claim, and within the scope of discovery in this action. In addition to her complaint and deposition testimony, Plaintiff has provided an affidavit, which states, inter alia, that:

- Maragos told that she was "definitely being hired onto his team,"
- that she was told by her manager that County Executive Mangano had signed the transfer paperwork, and
- that the New York State Attorney General's Office confirmed that her "transfer was secure and [that her] promotion was still going to take effect," and that she spoke with Maragos and Walker about the transfer.

Such sworn testimony buttresses Lozada's contention that she was offered a position, and that Maragos was personally involved in that decision. This Court disagrees with

10

Defendants' contention that Walker's conversations with Maragos and Lozada are irrelevant. That is because Lozada has alleged that Maragos hired her (an allegation which Defendants sharply contest) and that Walker advised Lozada of the reasons for the delay in her transfer. Such statements, if true, support Plaintiff's allegation that the County retaliated against Plaintiff by depriving her of a promised position. The Court finds that Plaintiff has sufficiently alleged that that both Maragos and Walker was personally aware of Lozada's promised transfer, and that they were both privy to the reasons that the transfer did not take place. Based upon Plaintiff's factual support, the Court finds that Lozada has proffered sufficient evidence providing a basis to believe that Maragos and Walker were personally involved in the denial of her transfer. Furthermore, as Lozada seeks to obtain information related to conversations that she had directly with Maragos and Walker, such information cannot be sought by other means.

As a final matter the Court notes that much of Defendants' argument in support of their motion to quash go to the merits of Plaintiff's claims, and not to the issue of whether the depositions are within the scope of discovery. Thus, Defendants attack relevancy on the grounds that Plaintiff can show neither adverse employment action nor Defendants' prior knowledge of any protected activity. <u>See</u> DE 24 at 2. In view of the sufficiency of Plaintiff's allegations in the context of the motion to quash, the broad ruling Defendants' seek as to the viability of Lozada's claims on the merits is inappropriate. Such arguments must await dispositive motion practice. At this time, Lozada has made an adequate showing that there is reason to believe that Maragos and Walker were personally involved in and/or had personal knowledge of the denial of her previously approved position. Accordingly, the Court holds that the depositions of Walker and Maragos are relevant, and that Plaintiff's requests to depose these witnesses is proportional to the needs of the case. The motion to quash these depositions must therefore be denied. The Court is

mindful however, of these witnesses' responsibilities and duties. The Court therefore directs that the depositions of Maragos and Walker go forward, subject to the following restrictions:

- Each deposition may not last more than two hours;
- The depositions must occur at the Nassau County Attorney's Office;
- Counsel shall make every effort to schedule the depositions at the convenience of the witnesses;
- The scope of the deposition shall be strictly limited to the witnesses' involvement and knowledge with respect to the alleged offer of employment with the Comptroller's office.

## Conclusion

The Defendants' motion to strike the depositions of Maragos and Walker is denied. Each deposition is subject to the restrictions set forth above.

Dated: December 20, 2017
Central Islip, New York			**SO ORDERED:**


			 /s/ Anne Y. Shields
			Anne Y. Shields
			United States Magistrate Judge