UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
BEATRICE LOZADA,
                        Plaintiff


        -against-                        MEMORANDUM & ORDER
                                         16-CV-6302 (JS)(AYS)
COUNTY OF NASSAU, and
EDWARD MANGANO, individually and
in his capacity as
NASSAU COUNTY EXECUTIVE,


                        Defendants.
----------------------------------X
APPEARANCES
For Plaintiff:      Jonathan A. Tand, Esq.
                    Morris Duffy Alonso & Faley
                    101 Greenwich Street, 22nd Floor
                    New York, New York  10006

For Defendants:     Jennean R. Rogers, Esq., for
                    Jared A. Kasschau, Nassau County Attorney
                    One West Street
                    Mineola, New York  11501


SEYBERT, District Judge:

I.   Introduction

        Plaintiff Beatrice Lozada ("Plaintiff" or "Lozada")
commenced this § 1983 action alleging she has been illegally
retaliated against for engaging in First Amendment protected
speech and petition.  (See Compl. ECF No. 1, ¶3.) The County of
Nassau ("County") and Edward Mangano, individually and in his
capacity as former Nassau County Executive ("Mangano"; together
with the County, the "County Defendants") move, pursuant to Rule

1

56 of the Federal Rules of Civil Procedure, for summary judgment in their favor, seeking to have Plaintiff's claims dismissed with prejudice.   (See Mot. Summ. J., ECF No. 43 (hereafter, the "Motion"); see also Support Memo., ECF No. 43-20.)  Lozada opposes the Motion.  (See Opp'n, ECF No. 47.)  For the reasons that follow, the Motion is GRANTED.

  II.  Background

      A.  *Factual Background*[1]

      1. General Information

      From at least 2006 until sometime in 2013, Plaintiff volunteered with the Elmont Fire Department ("EFD") as an emergency medical technician and firefighter.  (See Compl. ¶9.)  While a volunteer with the EFD, Plaintiff became an employee of the County in January 2010, when she was hired as an Administrative Aide for the Nassau County Coordinating Agency for Spanish Americans

---

[1]    Unless otherwise indicated, the facts are taken from the County Defendants' Rule 56. 1 Statement in support of their Motion (hereafter, "D-56.1 Stmt.")(see ECF No. 43-19), and Plaintiff's Rule 56.1 Counterstatement (hereafter, "P-56.1 Stmt.")(see ECF No. 47-1).  Unless otherwise stated, a standalone citation to a Rule 56.1 Statement or Counterstatement denotes that either the parties agree, or the Court has determined, that the underlying factual allegation(s) is(are) undisputed.  Citation to a party's Rule 56.1 Statement or Counterstatement incorporates by reference the document(s) cited therein.

    The County Defendants' exhibits, which are attached to the Declaration of Attorney Jennean R. Rodgers (see ECF No. 43-1), are identified by letters.  For ease of citation, the Court will simply cite to the lettered exhibits.  Plaintiff has not submitted any exhibits in support of her Opposition.

("CASA").  (See D-56.1 Stmt., ¶¶3, 73.)  She was promoted to Deputy Director of CASA in July 2010.  (See id., ¶5.)  Plaintiff was a non-union, ordinance employee of the County; as such, she was considered at-will.  (See id., ¶¶71-73; see also Ex. M, Hubber Depo., 14:15-22.)

### 2. The First Incident:  The 2011 EFD Discrimination Complaint

Sometime in 2011, Plaintiff filed a complaint with the New York State Division of Human Rights alleging she was subjected to harassment and discrimination while serving with the EFD (hereafter, the "2011 Complaint").  (See Compl., ¶¶11-12.)  The County did not become aware of the 2011 Complaint until March 2013.  (Id. at ¶¶13-14, 19; see also D-56.1 Stmt., ¶20.)  Plaintiff contends that once the County became aware of the 2011 Complaint, it "did everything in [its] collective power to freeze [her] out of the workplace."  (Compl., ¶21.)

### 3. The January 2013 Job Inquiry

Three years after becoming a County employee, in January 2013, Plaintiff inquired with the Comptroller's Office whether it had an available position matching her qualifications.  (See D-56.1 Stmt., ¶¶13-14.)  While Comptroller Maragos met with Plaintiff "to discuss the possibility of a position, . . . no formal offer of employment was made."  (Id. at ¶15; see also id. at ¶16.)  Indeed, "[t]he Comptroller never offered Ms. Lozada any position."

3

(Id. at ¶18.)   Moreover, "Maragos had no knowledge of" the 2011 Complaint "until the present suit was filed."   (Id. at ¶20.)

However, Plaintiff apparently informed her supervisor at CASA, Elidia Lowery ("Lowery"), that she "had been offered a position in the Comptroller's Office and would be leaving CASA." (Id. at ¶21.)   Despite Plaintiff's allegations, Lowery denies (i) telling Plaintiff that Plaintiff was not going to be promoted "because she 'pissed off' the administration" or (ii) threatening Plaintiff "with a 'blind transfer.'"   (Id. at ¶¶22, 23.)   In fact, Plaintiff was not transferred from CASA.   (See Ex. J, Lowery Depo, 56:2-4.)   Further, Lowery contends she was unaware of Plaintiff's 2011 Complaint until Plaintiff showed Lowery a newspaper article about it.   (See D-56.1 Stmt., ¶24; see also Ex. J, 42 (Lowery testifying to learning of Plaintiff's 2011 Complaint when Plaintiff showed Lowery a newspaper article).)   Plaintiff remained the Deputy Director of CASA until her termination in February 2016.

4. The Second Incident:  The 2013 EFD Fraud Complaint

Nassau County employee Ann Demichael worked for the Constituent Affairs Department, a County department not associated with CASA.   (See D-56.1 Stmt., ¶30.)   She did not work with Plaintiff; their departments did not interact; and, Demichael had no supervisory control over CASA or Plaintiff.   (Id.)   She and Plaintiff met in early March 2013 while preparing for a fundraiser event.   (Id. at ¶32; see also Ex. 0, N.C. Bates No. 000321.)

During their meeting, and in response to Demichael's alleged attempt to recruit Plaintiff to campaign in Elmont and at the EFD on behalf of the then-current County administration, Plaintiff explained that she could not be involved in those efforts due to her 2011 Complaint. (See Ex. O, N.C. Bates No. 000321-22.) Plaintiff also contends she told Demichael about an allegedly fraudulent pension fund scheme engaged in by EFD officers, i.e., the fabrication of call response sheets as a means of misappropriating monies from the EFD pension funds, thereby violating federal law. (See id. at N.C. Bates No. 00032.) After that one encounter, Plaintiff and Demichael never interacted again. (See D-56.1 Stmt., ¶40.)

The parties dispute Plaintiff's assertion that in response to informing Demichael about the alleged pension fraud at the EFD, Demichael instructed Plaintiff to "shut her mouth" and threatened her well-being and that of her family. (Ex. G, 71:4-13.) That led to Plaintiff lodging a verbal complaint against Demichael, on April 2, 2013, with the Nassau County Equal Employment Office ("EEO"). (See Ex. O, N.C. Bates No. 000321-23.) However, Plaintiff was advised that her complaint was not an EEO matter since her complaint of pension theft by the EFD was not "protected activity" "that relates to any protected classification identified in the EEO policy (i.e., race, religion, national origin, etc.)." (Id. at N.C. Bates No. 000323.) Nonetheless, she

was informed that she could make a formal workplace violence claim, which Plaintiff declined to do.  (See id.)  The matter was referred to the County's Human Resources department ("HR") and was investigated.   (D-56.1 Stmt., ¶¶37-38.)    Demichael denied Plaintiff's allegations, and HR discussed the County's standards of behavior for employees with Demichael.  (See id. at ¶38.)

     5. The Third Incident:  The 2014 Discrimination Complaint

     On or about June 30, 2014, Plaintiff filed a discrimination complaint with the New York State Division of Human Rights ("NYS-DHR") alleging the County engaged in unlawful discriminatory employment practices, including retaliation.  (D-56.1 Stmt., ¶25; see also Ex. E; Ex. O at N.C. Bates No. 000446 ("[Plaintiff] contends that she was denied a promotion/transfer with an accompanying $80k annual salary by [the County] as a result of her . . . having opposed discrimination/retaliation.").)  After investigating Plaintiff's 2014 Discrimination Complaint, NYS-DHR "found that no information was provided to support [Plaintiff's] claim of her having opposed discrimination/retaliation as provided in the definition for such under the New York State Human Rights Law."  (Ex. O, NYS-DHR "Final Investigation Report and Basis of Determination, at N.C. Bates No. 000446; see also id. at N.C. Bates No. 000445-46 ("Despite [Plaintiff]'s assertions that she was promised a promotion/transfer with an accompanying salary of $80k annually[,] she was unable to provide any information as to the

title of the position or what said position would entail. [Plaintiff] was unable to provide any specifics or documentations to support her assertion that she [was] being offered said position/transfer.").)  NYS-DHR determined that "the investigation does not support [Plaintiff]'s charging [the County] with unlawful discriminatory practices in retaliation to employment because of race/color, sex, opposed discrimination/retaliation."  (Id.; see also Ex. F, NYS-DHR "Determination and Order After Investigation" ("After investigation, and following opportunity for review of related information and evidence by the named parties, [NYS-DHR] has determined that there is NO PROBBLE CAUSE to believe that the [County] has engaged in or is engaging in the unlawful discriminatory practice complained of.").)

    6. Other Incidents

    In March 2014, Plaintiff lodged a Workplace Violence Incident Report involving an exchange between herself and a volunteer who worked at CASA.  (See Ex. O at N.C. Bates No. 000376-77.)  The incident was investigated, with the investigator noting: Plaintiff claimed the volunteer "yelled and screamed at her after she stated that she would help [a CASA] client," but that the volunteer "did not curse at her"; the volunteer acknowledged approaching Plaintiff, "but denie[d] yelling or cursing at her"; and, "[t]he witnesses who were working on that day did not hear

any yelling or cursing." (Id. at N.C. Bates No. 000385.)
Thereafter, the case was closed. (See id.)

Plaintiff alleges that on or about December 18, 2015,
she filed a notice of claim against the County and others
(hereafter, the "Notice of Claim").[2] (See Compl., ¶43.) The
"claim is based upon the [EFD's, Town of Hempstead's, and County's]
violation of [Plaintiff]'s statutory and constitutional rights by
means of unlawful retaliation based upon [Plaintiff]'s lawful
complaints of discrimination based upon her gender, national
origin, and marital status." (Ex. C, Notice of Claim, at 1-2.)
In her Notice of Claim, Plaintiff contends that, as a result of
making her 2011 Complaint, she has suffered retaliation by, inter
alia: being denied a promotion to the Comptroller's Office; no
longer being invited to participate in certain County events; and,
being denied applications to several civil service positions. (See
id. at 3.) There is no evidence that Plaintiff's supervisor,
Lowery, was aware of the Notice of Claim.

Plaintiff made two more workplace violence complaints,
both on February 22, 2016. The first February 22 complaint
involved an interaction with a volunteer worker. (See Ex. O at
N.C. Bates No. 000389 (stating Plaintiff reported subject

---

[2]    While the Notice of Claim is dated November 30, 2015, it was
received by the Nassau County Attorney's Office on December 17,
2015. (See Ex. C at 4; cf. id. at 1.)

volunteer "was yelling and blocking her office doorway so she could not exit her cubicle").) Plaintiff asserted that the volunteer "came to the doorway of her office and yelled[,] 'Do you have a problem with me,'" to which she responded, "'please step away from my door.'" (Id. at N.C. Bates No. 000390.) However, the volunteer "remained at [Plaintiff's] door for approx. 30 seconds so [Plaintiff] state[d] she remained sitting at her desk until [the volunteer] walked away crying." (Id.) After completing an investigation into this complaint, the Office of the County Attorney "determined that the actions of [the volunteer] did not violate the County's Workplace Violence Policy." (Id. at N.C. Bates No. 000397.)

Plaintiff based her second February 22, 2016 workplace violence complaint on the contention that while she was taking her lunch break at 11:00 a.m., a co-worker "yelled at her to help clients," and then "crossed out her name in a log book and wrote that clients waited an hour." (Id. at N.C. Bates No. 000401.) The County investigated this second February 22 complaint and determined that Plaintiff's co-worker did not violate the County's Workplace Violence Policy. (See id. at N.C. Bates No. 000406.)

7. Plaintiff's Termination

While Plaintiff's boss, Lowery, testified that Plaintiff initially was an excellent employee, that assessment changed at

the end of 2015.[3]   (See Ex. J at 22.)  For example, Plaintiff would leave the office without informing Lowery.  (D-56.1 Stmt., ¶58.) Similarly, she would leave early for the day, but fail to clock out or request the time off.  (See id.)  When asked by Lowery to properly request time off, Plaintiff failed to do so.  (See id. at ¶59.)

Apparently to defuse tension in the office, on December 9, 2015, Lowery "issued different memos regarding job duties for each CASA employee."  (D-56.1 Stmt., ¶42; see also id. at ¶¶49-50; Ex. J, 13:19-14:6.)  Per the memo regarding Plaintiff's job duties, she was: responsible for the oversight and processing of all contracts; required to "collaborat[e] with other CASA co-workers and maintain[] positive productive working relationships to manage the workload"; and, to assist constituents with various matters.  (Id. at ¶¶44-46.)  While Plaintiff's co-workers signed off on their respective memos, Plaintiff refused to sign hers. (See id. at ¶¶43, 47-48.)

Primarily because of her time and leave abuse, Plaintiff was terminated on February 26, 2016.  (See D-56.1 Stmt. ¶74; see also Ex. M, Huber Depo., 8:13-9:5, 15:14-21; Ex. J at 13:16-14:6, 24:17-25:14.)

---

[3]   Although Lowery testified that matters worsened at the end of 2016, having reviewed the entirety of her deposition testimony and since Plaintiff was terminated on February 26, 2016, it is apparent Lowery misspoke and meant the end of 2015.

B. *Procedural Background*

On November 14, 2016, Plaintiff commenced this action by filing a verified complaint raising two causes of action: retaliation for engaging in constitutionally protected free speech (First Cause of Action), and retaliation for engaging in constitutionally protected petitioning (Second Cause of Action). (See Compl.)  The crux of Plaintiff's Complaint is that, in retaliation for engaging in her right to free speech and free petition, she became known "as the 'problem child of Nassau County'", with Defendants "d[oing] everything in their collective power to freeze Plaintiff out of the workplace." (Id. ¶21.)  After the close of discovery, the County Defendants moved for summary judgment, requesting that all of Plaintiff's claims be dismissed with prejudice, asserting, inter alia:  Plaintiff's complaints based upon speech or activities made prior to November 14, 2013 are time-barred; Plaintiff's claims are precluded by collateral estoppel; there is no individual liability as to Mangano; Plaintiff cannot make out a claim of municipal liability because she cannot establish a municipal policy, practice or custom that caused the alleged violations of her constitutional rights; and, Plaintiff has failed to establish a causal connection between either her not securing the position in the Comptroller's Office or her termination and any alleged constitutional violations. (See Support Memo.)  Plaintiff opposed the Summary Judgment Motion

contending, <u>inter alia</u>: questions of material fact exist as to each element of her First Amendment claims; her claims are not time-barred because of they are subject to the continuing violation doctrine; collateral estoppel is inapplicable; and, she can establish municipal liability. (<u>See</u> Opp'n.)

III. <u>Discussion</u>

    *A. Applicable Law*

       1. <u>The Summary Judgment Standard</u>

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" <u>ING Bank N.V. v. M/V TEMARA, IMO No. 9333929</u>, 892 F.3d 511, 518 (2d Cir. 2018) (quoting Fed. R. Civ. P. 56(a)); <u>accord</u> <u>Jaffer v. Hirji</u>, 887 F.3d 111, 114 (2d Cir. 2018). In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); <u>see also</u> <u>Ricci v. DeStefano</u>, 557 U.S. 557, 586 (2009) ("On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." (internal quotations and citation omitted)).

In reviewing the record to determine whether there is a genuine issue for trial, the court must "construe the evidence in

the light most favorable to the non-moving party," <u>Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay</u>, 868 F.3d 104, 109 (2d Cir. 2017) (quotations, alterations and citation omitted), and "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." <u>Davis-Garett v. Urban Outfitters, Inc.</u>, 921 F.3d 30, 45 (2d Cir. 2019) (quotations and citation omitted); <u>see also</u> <u>Hancock v. County of Rensselaer</u>, 823 F.3d 58, 64 (2d Cir. 2018) ("In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party."). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." <u>Ricci</u>, 557 U.S. at 586 (quoting <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)); <u>accord</u> <u>Baez v. JetBlue Airways Corp.</u>, 793 F.3d 269, 274 (2d Cir. 2015).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." <u>CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP</u>, 735 F.3d 114, 123 (2d Cir. 2013) (quotations, brackets and citation omitted); <u>accord</u> <u>Jaffer</u>, 887 F.3d at 114. "[W]hen the moving party has carried its burden[,] . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . .

13

[,]" <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (quoting <u>Matsushita Elec.</u>, 475 U.S. at 586-87), and must offer "some hard evidence showing that its version of the events is not wholly fanciful[.]" <u>Miner v. Clinton County, N.Y.</u>, 541 F.3d 464, 471 (2d Cir. 2008) (quotations and citation omitted).  The nonmoving party can only defeat summary judgment "by adduc[ing] evidence on which the jury could reasonably find for that party."  <u>Lyons v. Lancer Ins. Co.</u>, 681 F.3d 50, 56 (2d Cir. 2012) (quotations, brackets and citation omitted).  Since "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party[,] . . . [i]f the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986)(quotations and citations omitted).

## 2. <u>First Amendment Retaliation Claims Standards</u>

"Where, as here, a plaintiff claims that he or she was retaliated against in violation of the First Amendment, he or she must plausibly allege that '(1) his [or her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him [or her]; and (3) there was a causal connection between this adverse action and the protected speech.'" <u>Montero v. City of Yonkers</u>, N.Y., 890 F.3d 386, 394 (2d Cir. 2018)(quoting <u>Cox v. Warwick Valley Cent. Sch. Dist.</u>, 654 F.3d 267, 272 (2d Cir. 2011)).  First Amendment retaliation claims brought pursuant to §

14

1983 in New York State are subject to the State's three-year statute of limitation.  See Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002) (three-year statute of limitations applies to claims arising in New York under 42 U.S.C. § 1983).

(a)  Speech by a Public Employee

Where a public employee speaks in the workplace "as a citizen . . . upon matters of public concern," he "may be protected from retaliation." Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968); see also Montero, 890 F.3d at 395.  When presented with a First Amendment Retaliation claim by a public employee, a court must first determine whether the plaintiff/employee's speech was undertaken as a citizen regarding a matter of public concern and, if so, assess whether the defendant/employer can establish that it "had an adequate justification for treating the employee differently [based on his or her speech] from any other member of the general public." Garcetti v. Ceballos, 574 U.S. 410, 418 (2006) (citing Pickering, 391 U.S. at 568).  If, however, a public employee makes a statement pursuant to his official duties, he is not speaking as a public citizen for First Amendment purposes, and, under such a scenario, "the Constitution does not insulate [the employee's] communications from employer discipline." Montero, 890 F.3d at 395 (quoting Garcetti, 574 U.S. at 421).  When determining whether an employee's speech addresses a matter of public concern, a court must examine the "content, form, and

15

context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-48 (1983). "The inquiry into the protected status of speech is one of law, not fact." Id. at 148 n.7.

(b)   Petitioning by a Public Employee

When a public employee raises a claim of retaliation based upon an alleged First Amendment right-to-petition, it is analyzed under the same rubric as a Speech Clause claim. See Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379, 398 (2011) ("The framework used to govern Speech Clause claims by public employees, when applied to the Petition Clause, will protect both the interests of the government and the First Amendment right."). Hence:

> If a public employee petitions as an employee on a matter of purely private concern, the employee's First Amendment interest must give way, as it does in speech cases. [But, w]hen a public employee petitions as a citizen on a matter of public concern, the employee's First Amendment interest must be balanced against the countervailing interest of the government in the effective and efficient management of its internal affairs.

Id. Thus, as with a First Amendment speech claim, deciding "[w]hether First Amendment activity addresses a matter of public concern is an issue of law," Lakner v. Lantz, No. 3:08-CV-0887, 2011 WL 4572673, at *2 (D. Conn. Sept. 30, 2011)(citing Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003)), and making that

16

determination requires a court to consider the "content, form, and context" of the given activity "as revealed by the whole record." Guarnieri, 564 U.S. at 398 (quoting Connick, 461 U.S. at 147-48; internal quotations omitted).

   B. *The Instant Case*

       As an initial matter, while Plaintiff's Complaint is not the exemplar of clarity, it appears that her First Amendment retaliation claims are based upon the following adverse actions:[4] (i) the County's alleged failure to promote Plaintiff in 2013, and (ii) Plaintiff's February 26, 2016 termination.[5]   As will be

---

[4]    "An adverse employment action is 'a materially adverse change in the terms and conditions of employment.'" Fahrenkrug v. Verizon Srvs. Corp., 652 F. App'x 54, 56 (2d Cir. 2016)(quoting Sanders v. N.Y.C. Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004)); accord Davis v. N.Y.C. Dep't of Educ., 804 F.3d 231, 235 (2d Cir. 2015). It "'must be more disruptive than a mere inconvenience or an alteration of job responsibilities and might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices [] unique to a particular situation.'" Fox v. Costco Wholesale Corp., 918 F.3d 65, 71-72 (2d Cir. 2019)(quoting Patrolmen's Benevolent Ass'n of City of N.Y. v. City of N.Y., 310 F.3d 43, 51 (2d Cir. 2002)). Rather, it is "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015)(quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)).

[5]    To the extent Plaintiff alleged other "adverse action" incidents, in addition to said incidents being woefully vague and conclusory, in opposing Defendants' Summary Judgment Motion, Plaintiff has failed to advance or discuss them in any meaningful way. (See Opp'n, in passim.) Accordingly, Plaintiff is deemed to have abandoned any other incident as a bases for finding unlawful retaliation. See, e.g., Jackson v. Fed. Express, 766 F.3d 189,

discussed, upon the summary judgment record presented,[6] Plaintiff cannot maintain her retaliation action.

---

198 (2d Cir. 2014)("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); Camarda v. Selover, 673 F. App'x 26, 30 (2d Cir. 2016)("Even where abandonment by a counseled party is not explicit, a court may infer abandonment from the papers and circumstances viewed as a whole." (internal quotation marks and citation omitted)).

[6]     The Second Circuit has recently stated, "Plaintiffs who ignore their obligations under Local Rule 56.1 do so at their own peril." Genova v. County of Nassau, No. 20-1049-CV, -- F. App'x --, 2021 WL 1115607, at *2 (2d Cir. Mar. 24, 2021)(summary order).  Here, Plaintiff has ignored those obligations since, with one exception (see Plaintiff's "Response" to Defendants' Rule 56.1 Statement at paragraph 62), she fails to specifically controvert the Defendants' Rule 56.1 Statements, thereby flouting the requirement of Local Civil Rule 56.1(d) that "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  (emphasis added). Moreover, Plaintiff's disputes are conclusory in nature, which contradicts the Second Circuit's instruction that conclusory denials "'cannot by themselves create a genuine issue of material fact where none would otherwise exist,' nor can 'mere speculation or conjecture as to the true nature of the facts.'" Estate of Keenan v. Hoffman-Rosenfeld, 833 F. App'x 489, 491 (2d Cir. Nov. 5, 2020) (quoting Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks omitted))(concluding district court did not abuse its discretion in deeming admitted movants' statements of facts where nonmovant responded with conclusory statements). Hence, Defendants' Rule 56.1 Statements are deemed admitted for the purpose of deciding the instant Motion, with the exception of paragraph 62 of Defendants' Rule 56.1 Statement, based upon Plaintiff's failure to comply with Local Rule 56.1(d) by not specifically controverting Defendants' Rule 56.1 Statements.  See Skates v. Inc. Vill. of Freeport, 265 F. Supp. 3d 222, 233 (E.D.N.Y. 2017) ("As Plaintiff failed to specifically controvert the facts in [the County] Defendant[s'] Local Rule 56.1 Statement, the facts contained therein that are supported by record evidence are deemed admitted for purposes of the instant [M]otion." (citing

1. <u>Claims of Retaliation Based Upon The 2013 Failure-to-Promote are Time-Barred</u>

Even assuming, <u>arguendo</u>, that Plaintiff engaged in protected First Amendment speech and activities, her claims that the alleged 2013 failure-to-promote constitute unlawful retaliation in response to her 2011 Complaint and other vague

---

<u>Verlus v. Liberty Mut. Ins. Co.</u>, No. 14-CV-2493, 2015 WL 7170484, at *1 (S.D.N.Y. Nov. 12, 2015) ("Plaintiffs' failure to specifically controvert Defendant's Local Civil Rule 56.1 Statement requires this Court to deem Defendant's version of the facts admitted for purposes of this motion."))); <u>Taylor & Fulton Packing, LLC v. Marco Intern. Foods, LLC</u>, No. 09-CV-2614, 2011 WL 6329194, at *4 (E.D.N.Y. Dec. 16, 2011)("Where a nonmovant . . . files a deficient statement, courts frequently deem all supported assertions in the movant's statement admitted and find summary judgment appropriate." (footnote omitted)); <u>see also</u> <u>Ezagui v. City of N.Y.</u>, 726 F. Supp. 2d 275, 285 n.8 (S.D.N.Y. 2010)(noting statements which a nonmovant does "not specifically deny-with citations to supporting evidence-are deemed admitted for purposes of [movant's] summary judgment motion") (collecting cases); <u>Universal Calvary Church v. City of N.Y.</u>, No. 96-CV-4606, 2000 WL 1745048, at *2 n.5 (S.D.N.Y. Nov. 28, 2000)(discussing Local Rule 56.1(d)'s requirement and collecting cases deeming as admitted denied statements of fact where the denials were conclusory and/or not properly supported by evidence). Further, the Court finds that paragraph 62, while disputed, does not address a material fact that must be addressed to resolve this Motion.

Local Rule 56.1(b) also permits a nonmovant to include "if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Pursuant to Local Rule 56.1(b), Plaintiff has submitted "ADDITIONAL FACTS" in her Rule 56.1 Counterstatement. (<u>See</u> P-56.1 Stmt., ECF No. 47-1, at pp.11-12, ¶¶1-17; hereafter, the "Additional Facts".) Defendants filed a responsive statement admitting some of the Additional Facts and denying others. (<u>See</u> Resp. Add'l Facts, ECF No. 50-1.) However, the Court need not address the Additional Facts because they relate to Plaintiff's claims which are time-barred. (<u>See</u> <u>infra</u>.)

complaints are time-barred.[7]  As the Defendants assert, "it is uncontested that Plaintiff was aware that she was not being hired to the position in the Comptroller's Office as early as September 2013 – at least two months outside the statute of limitations period." (Reply, ECF No. 50, at 2 (citing Ex. E, Plaintiff's 2014 Discrimination Complaint (indicating Plaintiff believed for nine months that she would be promoted)); see also Compl. (dated, verified, and filed Nov. 14, 2016).)  In opposition, Plaintiff

---

[7]    The Court notes Plaintiff's Second Cause of Action, alleging retaliation for engaging in constitutionally protected petitioning, is premised upon her "petitioning the government for redress against the Town of Elmont Fire Department." (See Compl. ¶56(e).)  However, even if not considered time-barred for the same reasons discussed infra, this claim would be deemed waived.  "Where . . . a public employee brings a retaliation claim based on the First Amendment, a plaintiff must put forth evidence . . . demonstrate[ing] . . . a prima facie case." Frisenda v. Inc. Vill. Of Malverne, 775 F. Supp. 2d 486, 503 (E.D.N.Y. 2011)(emphasis added).  Although Plaintiff contends to have "raised questions of material fact as to each element of his [sic] claims of violation of Plaintiff's First Amendment Right to petition the government" (Opp'n at 12-13 (vaguely alluding to "foregoing reasons")), she cites to none. (See id. at 13.)  Moreover, other than generally stating the applicable law, Plaintiff has not advanced any argument supporting her retaliation-for-petitioning claim. (See id. at 12-13.)  Since Plaintiff has failed to specifically or meaningfully address this argument, her Second Cause of Action would be deemed waived. See, e.g., Jackson, 766 F.3d at 198; Camarda, 673 F. App'x at 30; Neurological Surgery, P.C. v. Travelers Co., 243 F. Supp. 3d 318, 329 (E.D.N.Y. 2017)(deeming an argument waived because it was not addressed in a party's opposition brief); see also Patacca v. CSC Hldgs., LLC, No. 16-CV-0679, 2019 WL 1676001, at *13 (E.D.N.Y. Apr. 17, 2019)(deeming waived claims which are not fully addressed in opposition papers)(collecting cases); Petrisch v. HSBC Bank USA, Inc., No. 07-CV-3303, 2013 WL 1316712, at *17 (E.D.N.Y. Mar. 28, 2013)(collecting cases holding that where party fails to address arguments in opposition papers on summary judgment motion, the claim is deemed abandoned).

contends she "endured a pattern of ongoing harassment that <u>began before the applicable time period</u> but continued into the statutorily prescribed time period" as she was "ultimately . . . denied her job transfer due to the Mangano administration looking to retaliate against [her] for speaking about Mangano's political ally at the Elmont Fire Department."   (Opp'n at 13 (emphasis added).)

To the extent Plaintiff relies upon the "continuing violation" doctrine to utilize the 2013 failure-to-promote incident as an adverse action, said reliance is misplaced.  First, as the Defendants observe:  "Plaintiff supports Defendant's [<u>sic</u>] argument in rejecting the continuing violations applicability to this case" when she stated "that 'because plaintiff has only alleged private civil torts, the continuing violation doctrine is inapplicable.'"   (Reply at 1 (quoting Opp'n at 13).)  Second, the "doctrine applies only to harassment claims.  It is inapplicable to discrimination and retaliation claims." <u>Harris v. Bd. Of Educ. Of the City Sch. Dist.</u>, 230 F. Supp. 3d 88, 98 (E.D.N.Y. 2017) (citing <u>Dimitracopoulos v. City of N.Y.</u>, 26 F. Supp. 3d 200, 212 (E.D.N.Y. 2014)).  Moreover, "[t]he 'mere fact that the effects of retaliation are continuing does not make the retaliatory act itself a continuing one.'"   <u>Gonzalez v. Hasty</u>, 802 F.3d 212, 222-23 (2d Cir. 2015)(quoting <u>Deters v. City of Poughkeepsie</u>, 150 F. App'x 10, 12 (2d Cir. 2005) (summary order)).  Indeed, the Second Circuit

has held that "[a] refusal to hire is a 'discrete act[ ]' that 'constitutes a separate actionable 'unlawful employment practice,' such that the applicable statute of limitations begins to run from the date of the adverse hiring decision." Rodriguez v. County of Nassau, 547 F. App'x 79, 81 (2d Cir. 2013)(quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002)).  Although she is vague throughout with dates, in her verified Complaint, Plaintiff avers that the County became aware of her 2011 Complaint in March 2013, after which Defendants rescinded her promotion. (See Compl. ¶¶19, 33.)  Thus, by her own admission, Plaintiff was aware of the Defendants' adverse hiring decision well outside the applicable statute of limitation.  Third, even if Plaintiff had not conceded the inapplicability of the continuing violation doctrine, she has failed to present evidence that the County's alleged 2013 failure-to-promote decision was part of an ongoing engagement in unlawful discriminatory retaliation; therefore, there is no basis for tolling the limitations period.  See, e.g., Laurent v. City of N.Y., No. 17-CV-5740, 2019 WL 1364230, at *5-6 (E.D.N.Y. Mar. 26, 2019)(relying upon Rodriguez, 547 F. App'x 79, for concluding no continuing violation is established in the absence of showing an ongoing discriminatory policy).  Given that Plaintiff concedes the alleged failure-to-promote retaliation occurred beyond the three-year statute of limitations (see Opp'n at 13) and finding that the continuing violation doctrine is

inapplicable in this instance, as a matter of law, the Defendants are entitled to summary judgment in their favor as to Plaintiff's claims of retaliation based upon her engagement in the alleged free speech and free petition activities prior to November 14, 2013.

Even if that were not the case and continuing to assume, arguendo, protected First Amendment speech and/or activity, Plaintiff could not make out a prima facie case of First Amendment retaliation since she is unable to establish the requisite adverse action elements.   See Montero, 890 F.3d at 394.   As noted, an adverse employment action is one that has a materially adverse change in the terms and conditions of employment.   (See supra note 4.)   Upon the record presented, Plaintiff is unable to establish such a change in 2013 for the simple reason that, in the first instance, she is unable to prove she was offered a new position in the Comptroller's Office.   (See D-56.1 Stmt., ¶¶15-18; see also Ex. K, Maragos Depo., 18 (testifying that that no formal or informal offer of a position was made to Plaintiff), 21-22 (same).) Indeed, the record evidence shows that in investigating Plaintiff's 2014 Discrimination Complaint, the NYS-DHR found Plaintiff "was unable to provide any specifics or documentations to support her assertion" "that she was promised a promotion/transfer with an accompanying salary of $80k annually" (Ex O at N.C. Bates Nos. 000445-46), leading to its determination

that the County did not engage in discriminatory retaliation. (See Ex. F at 1; see also id. at 2 (stating that despite Plaintiff allegedly being told she would be transferred, "she continues to work in the same department and no such transfer has occurred or is pending").) Plaintiff is collaterally estopped from rearguing a denial of promotion in the face of the NYS-DHR's investigation to the contrary and its subsequent determination.[8] See Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 728 (2d Cir. 2001)("[I]n § 1983 actions, the factual determinations of a state administrative agency, acting in a judicial capacity, are entitled to the same issue and claim preclusive effect in federal court that the agency's determinations would receive in the State's courts."); id. at 730 (instructing "that there must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and [that] the party to be estopped must have had a full and fair opportunity to contest the decision now said to be controlling" (internal quotation marks and citation omitted)). Moreover, Plaintiff has failed to advance

---

[8] Plaintiff does not argue the absence of a full and fair opportunity to litigate the failure-to-promote issue; instead, she contends that the NYS-DHR's decision "in no part cites first amendment retaliation, free speech, corruption, or any of the allegations in the instant matter." (See Opp'n at 13-14); cf. Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 730 (2d Cir. 2001) ("the opponent bears the burden of proving that he or she did not have a full and fair opportunity to litigate the issue" (citation omitted)).

admissible evidence of a job offer that was later reneged which
would create a disputed fact necessitating a jury trial.  Thus,
given the dearth of evidence that Plaintiff suffered actionable
adverse employment action by being denied a promotion, she would
be unable to carry her prima facie burden of establishing First
Amendment retaliation,[9] thereby warranting summary judgment in
Defendants' favor as a matter of law.

### 2. As to Her 2016 Termination, Plaintiff Cannot Establish a *Prima Facie* Case of First Amendment Retaliation

Upon the record presented, Plaintiff is unable to make
out a prima facie case that her February 26, 2016 termination was
in retaliation for engaging in protected First Amendment speech or
activity since none of the conduct she puts forth is protected
activity.

As to Plaintiff's 2014 Discrimination Complaint, a
careful examination of the content, form, and context of said
Complaint, as revealed by the whole record, see Connick, 461 U.S.
at 147-48, demonstrates that the complaint was personal in nature,
generally relating to Plaintiff's own situation, i.e., her
dissatisfaction with the conditions of her employment.  See Lewis

---

[9]    For substantially the same reason, to the extent Plaintiff
contends she suffered an adverse employment action because of an
alleged threatened transfer, since the record evidence establishes
Plaintiff maintained her Deputy Director position with CASA until
her February 2016 termination, she cannot rely on said transfer
threat to carry her First Amendment retaliation prima facie burden.

v. Cowen, 165 F.3d 154, 164 (2d Cir. 1999)("speech on a purely private matter, such as an employee's dissatisfaction with the conditions of his employment, does not pertain to a matter of public concern"); Volpe v. Ryder, No. 19-CV-2236, 2020 WL 7699949, at *9 (E.D.N.Y. Oct. 16, 2020)(recommending dismissal of First Amendment retaliation claim "on the basis of a lack of protected speech" where speech addressed plaintiff's "own situation and viewed, in context, was certainly of a purely private nature"), report & recommendation adopted, 2020 WL 7041091 (E.D.N.Y. Nov. 30, 2020).  As such, the 2014 Complaint did not address a matter of public concern and, therefore, cannot support a prima facie case of First Amendment retaliation.  Yet, even assuming, arguendo, that were not the case, in the absence of any other evidence suggesting retaliation animus, the more than year-and-a-half expanse of time between the 2014 Discrimination Complaint and her termination is too temporally attenuated to establish the requisite causal connection in this instance.  See Montero, 890 F.3d at 394 (instructing that to maintain a First Amendment Free Speech retaliation claim, there must be a causal connection between the adverse action and protected speech); Morgan v. Dep't of Motor Vehicles, No. 3:17-CV-2091, 2020 WL 1322834, at *10 (D. Conn. Mar. 20, 2020) ("[W]hile the Second Circuit has at times found evidence of causation despite gaps of several months between the protected activity and the adverse action, those cases involved either a

factual context making the defendant's delay in retaliating plausible or additional evidence of causation. Neither is present in this case." (referring to Espinol v. Goord, 558 F.3d 119, 129 (2d Cir. 2009))).

Nor can Plaintiff rely upon her 2015 Notice of Claim as protected First Amendment speech or activity because it does not address matters of public concern. Cf. Pickering, 391 U.S. at 568 (instructing that where a public employee speaks in the "workplace as a citizen . . . upon matters of public concern," she "may be protected from retaliation"). An examination of Plaintiff's Notice of Claim shows it related to her employment, in which she had a personal stake, and that by said Claim, Plaintiff sought relief solely for herself. See, e.g., Sousa v. Roque, 578 F.3d 164, 174 (2d Cir. 2009)("An employee who complains solely about his own dissatisfaction with the conditions of his own employment is speaking upon matters only of personal interest." (internal quotation marks omitted)). There is no evidence here that the Notice of Claim was made to address some public concern or to be disseminated in furtherance of public discourse. See, e.g., Frisenda v. Inc. Village of Malverne, 775 F. Supp.2d 486, 507 (E.D.N.Y. 2011) (finding employee's speech not protected because, inter alia, it was not concerning a matter of public concern and was not intended to be publicly disseminated in furtherance of civic discourse (quoting Garcetti, 547 U.S. at 422)). Moreover,

there is no evidence that Plaintiff's superior, Lowery, had any knowledge of the Notice of Claim.

Similarly, Plaintiff's three workplace violence reports, including those lodged days before Plaintiff's termination, were personal in nature, regarding unwelcomed interactions with work colleagues, for which Plaintiff sought redress.  It is apparent these reports did not address matters of public concern nor were they disseminated in furtherance of public discourse.  Rather, Plaintiff's "complaints addressed h[er] own situation and viewed, in context, were certainly of a purely private nature."  Volpe, 2020 WL 7699949, at *9 (recommending dismissal of First Amendment retaliation claim "on the basis of a lack of protected speech"), report & recommendation adopted, 2020 WL 7041091 (E.D.N.Y. Nov. 30, 2020); see also Montero, 890 F.3d at 399 (instructing speech that "principally focuses on an issue that is personal in nature and generally related to the speaker's own situation" or that is "calculated to redress personal grievances" does not qualify for First Amendment protection)(citations omitted)).  Hence, none of those reports are entitled to First Amendment protection; nor can any of them serve as the basis for Plaintiff's First Amendment retaliation claims.

The Court's determination that this action does not address a matter of public concern or warrant First Amendment protection is buttressed by the fact that Plaintiff complains

28

predominantly of personal damages to her income, and emotional and psychological well-being, seeking relief that is personal to her. (See Compl., Pray for Relief, at 12 13); cf. Storman v. Klein, 395 F. App'x 790, 794 (2d Cir. 2010)(observing that plaintiff "complain[ed] solely of personal damages to his income, retirement benefits, reputation, and physical and emotion well-being" in affirming district court's determination that "Storman's suit addresse[d] solely personal grievances . . . and s[ought] relief only for himself," and, therefore "d[id] not address a matter of public concern or warrant First Amendment protection")(quoting Storman v. Klein, No. 09-CV-0338, 2009 WL 10740175, at *2 (S.D.N.Y. Aug. 17, 2009))(cleaned up)).

### 3. The Absence of Municipal Liability

Because Plaintiff has not put forth evidence supporting a valid underlying constitutional deprivation, her claims against the County pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), are untenable. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (observing that Monell liability does not lie where a municipality's officer does not inflict constitutional harm); Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006)("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell [in the summary judgment context] was entirely correct."); cf. Johnson v. City of

N.Y., 551 F. App'x 14, 15 (2d Cir. 2014)(affirming dismissal of complaint where plaintiff failed to allege a valid underlying constitutional deprivation).

Moreover, even if Plaintiff could maintain such claims, no municipal liability would lie in this instance as Plaintiff has failed to establish the alleged adverse employment actions were the result of a County policy.  See, e.g., Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 140 (2d Cir. 2010) (instructing that to prove a Monell claim, a plaintiff must show "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right") (citations omitted).  One way to establish a policy or custom is to show "actions taken or decisions made by municipal officials with final decision-making authority, which caused the alleged violation of the plaintiff's civil rights."  Naples v. Stefanelli, 972 F. Supp. 2d 373, 387 (E.D.N.Y. 2013).  Here, Plaintiff argues that Mangano was "a final policyholder" who "himself nixed Plaintiff's potential transfer to the comptroller's office."  (Opp'n at 15.)  However, as Defendants aptly counter, and as confirmed by the Court's review of the record:  "Plaintiff has not offered even a scintilla evidence to demonstrate that Mangano either denied her a transfer to the Comptroller's office[] or terminated her employment due to any speech that she made," including "her speech pertaining to [the] Elmont Fire Department."  (Reply at 8.)

4. No Basis to Find Mangano Liable

Plaintiff has sued Mangano both in his individual and official capacity. (See Compl, Caption.) Even if not time barred or waived, Plaintiff's claims against Mangano would be unavailing.

First, it is well-settled that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [municipal] entity [of which the officer is an agent]." Kentucky v. Graham, 473 U.S. 159, 166 (1985); accord Castanza v. Town of Brookhaven, 700 F. Supp. 2d 277, 283-84 (E.D.N.Y. 2010) ("Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." (brackets omitted; internal quotation marks and citation omitted)). Hence, "[w]ithin the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant." Phillips v. County of Orange, 894 F. Supp. 2d 345, 385 (S.D.N.Y. 2012)(collecting cases). Because the County is named in the Complaint (see Compl. ¶7), the claims against Mangano in his official capacity are duplicative and properly dismissed. See, e.g., Field Day, LLC v. County of Suffolk, 799 F. Supp. 2d, 205, 214 (E.D.N.Y. 2011)(dismissing, on motion for summary judgment, claims against individual sued in his official capacity, because real party in interest was the co-

31

defendant County)(citing Hafer v. Melo, 502 U.S. 21, 25-26 (1991); Graham, 473 U.S. at 167 n.14).

Second, Plaintiff has failed to show that Mangano was personally involved in the 2013 alleged failure-to-promote incident or in her 2016 termination.  Instead, the record evidence demonstrates Mangano had a general knowledge of Plaintiff, e.g., that she was a possible supporter, had an interest in mixed martial arts ("MMA"), and worked for CASA and may have been at County events.  (See Ex. I., Mangano Depo., at 15 (general supporter), 13, 21 (MMA interest), 14 (worked for CASA), 14, 16 (may have attended County events).)   Yet, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  See Victory v. Pataki, 814 F.3d 47, 67 (2d Cir. 2016) (internal quotations and citation omitted); see also Grullon v. City of New Haven, 720 F.3d 133, 138-39 (2d Cir. 2013)("[I]n order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation."); Spavone v. N.Y.S. Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir.2013) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir.1995)(internal quotation marks omitted).  Thus, upon the record presented, no

32

reasonable juror could find that Mangano was personally involved in the constitutional deprivations of which Plaintiff complains.

***

To the extent not expressly addressed, the Court has considered Plaintiff's remaining arguments and finds they are without merit and/or fail to raise triable issues of fact that would warrant denying summary judgment in Defendants' favor.

IV.  <u>Conclusion</u>

Accordingly, **IT IS HEREBY ORDERED** that:

A. The Defendants' Summary Judgment Motion is GRANTED; and

B. The Clerk of Court is directed to

   1. dismiss with prejudice all Plaintiff's causes of action against the Defendants;

   2. enter judgment in the Defendants' favor; and,

   3. thereafter, close this case.

**SO ORDERED.**

/s/ JOANNA SEYBERT
JOANNA SEYBERT, U.S.D.J

Dated:   March 31, 2021
         Central Islip, New York